UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

KEVIN EDWARD LYONS, JR.,

   Plaintiff,

v.                                                         Case No. 23-cv-730

BRENT DILGE, *et al.*,

   Defendants.
_____

# ORDER
_____

Plaintiff Kevin Edward Lyons, Jr., who is representing himself and currently confined at Shawano County Jail, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Lyons was allowed to proceed on Fourth Amendment excessive force claim against defendants Brent Dilge, Tyler Steenbock, and Sam Meshnick. The defendants filed a motion for summary judgment. (ECF No. 41.) The motion is fully briefed and ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment.

## PRELIMINARY MATTERS

The defendants argue that Lyons failed to respond their proposed findings of fact, so the court should deem them undisputed pursuant to Fed. R. Civ. P. 56(e)(2). District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most

favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). In reviewing Lyons's response materials, he appears to have substantially responded to the defendants' proposed findings of facts, though not formally, and supported his response with a declaration, (*see* ECF Nos. 53-54). The evidence presented suffices for the court to issue a decision on the defendants' motion for summary judgment.

## FACTS

It is undisputed that many of the below facts are supported by two body camera videos that have audio. (ECF No. 51.) On December 5, 2022, Lyons was living in a tent behind a Tractor Supply store in Shawano, Wisconsin. (ECF No. 43, ¶ 1.) That same day, Lyons's mother called Shawano Public Safety to request a welfare check on Lyons. (*Id.*, ¶ 2.) Around noon, defendants Dilge and Steenbock went to conduct the welfare check. (*Id,* ¶ 3.) Upon dispatch, Dilge and Steenbock were told that according to his mother "Lyons was living in a tent, suicidal, taking pills and alcohol, and did not have a cell phone but typically carried a knife." (*Id.*, ¶ 4.) Dispatch also informed Dilge and Steenbock that "Lyons had multiple cautions attached to his name for threats against law enforcement and violence." (*Id.*, ¶ 5.)

As the body camera videos show, Dilge and Steenbock approached Lyons' tent, stated that they were members of the Shawano Police Department, and were checking to see if Lyons was okay. (ECF No. 43, ¶ 9.) Their tone was friendly and not aggressive. (*Id.*, ¶ 10.) They repeatedly requested Lyons to come out of his tent, but Lyons did not respond. (*Id.*, ¶¶ 9-11.) Lyons's feet were sticking out of the tent, and in an apparent attempt to see if Lyons was awake, Steenbock gently tossed a plastic

2

water bottle at Lyons's feet. (*Id.*, ¶ 12-13; ECF No. 51, Dilge Video at 4:06-4:10.) When Lyons did not respond, Steenbock gently tapped Lyons's foot with his foot. (ECF No. 43, ¶ 14.) Finally, Lyons began to groan and groggily told Dilge and Steenbock to leave him alone. (*Id.*, ¶ 15.) Dilge and Steenbock responded that Lyons's family was very concerned about him, but Lyons stated, "I don't give a fuck. Leave me alone. That's why I got this gun in here to shoot you motherfuckers." (*Id.*, ¶ 16.) Lyons then got out of the tent and "entered into a fighting stance" all the while yelling profanities at Dilge and Steenbock. (*Id.*, ¶ 17.) On several occasions he threatened to fight them; told them he was "lethal", and told them to get their guns. (*Id.*, ¶ 18.) Lyons dodged passed Dilge and Steenbock and began running towards the back lot of the Tractor Supply. (*Id.*, ¶ 19.) Dilge and Steenbock ordered Lyons to stop on several occasions, but Lyons did not comply. (*Id.*)

Lyons slowed down in the back lot behind the Tractor Supply. (ECF No. 43, ¶ 21.) At that point, defendant Meshnick arrived to provide assistance. (*Id.*, ¶ 22.) The defendants kept reiterating that they just wanted to talk with Lyons and did not want to fight him. (*Id.*, ¶ 23.) Lyons responded stating that he wanted to fight, and he rolled up his sleeves and assumed a "boxing stance". (*Id.*, ¶ 24.) Lyons first approached Steenbock in a fighting stance, and then approached Meshnick. (*Id.*, ¶ 25.) Due to Lyons's aggressive behavior, the defendants arrested him for disorderly conduct and threating law enforcement. (*Id.*, ¶ 27.) To complete the arrest, as the video shows, the defendants approached Lyons at the same time, restrained him, and lowered him to the ground, placing his arms behind his back and cuffing him. (*Id.*, ¶¶ 27-28.) Once

3

Lyons was secured, Steenbock asked Lyons if he was okay and if he needed medical attention. (*Id.*, ¶ 29.) Lyons refused medical attention. (*Id.*, ¶ 30.) As the defendants attempted to get Lyons into the back of a squad car, Lyons continued to resist the defendants, by first refusing to walk on his own, and then refusing to get into the car. (*Id.*, ¶ 31.) Once the defendants got Lyons into the back of the squad car, they took him to Theda Medical Center in Shawano where he was medically cleared. (*Id.*, ¶ 33.) They then took him to Shawano County Jail. (*Id.*) The defendants assert that "Lyons suffered no physical pain or injuries as a result of his arrest." (*Id.*, ¶ 34.)

Lyons does not dispute the majority of the encounter. In fact, at his deposition, he admitted that he "has no memory of this arrest" because he was under the influence of crystal meth, marijuana, and alcohol. (ECF No. 43, ¶¶ 7-8.) Nevertheless, he asserts that Steenbock throwing a "water jug" at him constitutes excessive force. (ECF No. 54, ¶ 1.) He also alleges that they searched his home and person without a warrant, and they had no need to bother a person who was simply sleeping in his tent. (*Id.*, ¶¶ 2-4; ECF No. 53 at 2.) He also states that he was hit in the arm, but the videos, which recorded the entirety of the incident clearly, do not show that Lyons was hit in the arm at any point. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts"

4

are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Lyons claims that the defendants violated his Fourth Amendment rights when they used excessive force against him during their welfare check. The court examines

5

an excessive force claim under the Fourth Amendment's objective reasonableness standard. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id.* The court considers several relevant factors "including the severity of the crime; whether the suspect posed an immediate threat to the officers or others; whether the suspect was resisting or evading arrest; whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties." *Id.* Ultimately, the court should "determine 'whether the force used to seize the suspect was excessive in relation to the danger he posed . . . if left unattended.'" *Id.* (quoting *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011)).

Lyons claimed that the defendants used excessive force against him when they threw a water jug at him and hit him in the arm during his arrest. The court has the benefit of video evidence, which clearly shows that the defendants did not engage in excessive force. The water bottle was gently tossed; Lyons's foot was gently nudged; and there is no evidence that anyone hit him on the arm. "Where opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 327, 376 (2007).

6

The video also shows that the arrest was reasonably executed. Lyons was clearly in a heightened state, acting aggressively and threateningly towards the defendants. At certain points he stated he had a weapon. A concerted effort to effectively restrain him to arrest him was reasonable under the circumstances. Lyons was also clearly resisting being put in the squad car, so any discomfort he experienced was the result of his own actions. Additionally, it is undisputed that Lyons suffered no physical injury from the encounter.

Lyons spends the bulk of his response arguing that the defendants needlessly disturbed him; woke up him; entered his home; and provoked an arrest. Even if true, at screening he was allowed to proceed on a Fourth Amendment claim against the defendants for using "more force than necessary to arrest him and transport him to the hospital." (ECF No. 9 at 5.) Lyons is limited to the scope of the screening order, so the court will not consider his arguments about a potential unlawful search and/or seizure. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013).

Thus, as the video shows, no reasonable jury could conclude that the defendants used excessive force when interacting with Lyons. Summary judgment is granted in their favor.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment. The defendants also argued that they were entitled to qualified

7

immunity. Because the court grants summary judgment in their favor on the merits, the court does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 12th day of December, 2024.

STEPHEN DRIES
United States Magistrate Judge